**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THOMAS JEFFERSON UNIVERSITY, *et al.*,  :
                Plaintiffs,  :
                            :
           v.  :      Civil No.: 5:26-cv-02215-JMG
                            :
AETNA HEALTH INC.,  :
                Defendant.  :

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                              **August 5, 2026**

## I.    OVERVIEW

On June 5, 2026, the American Hospital Association ("AHA") and the Hospital and Healthsystem Association of Pennsylvania ("HAP") (collectively, the "Movants") filed the present Motion for Leave to File Brief as *Amici Curiae*. Movants assert that they are uniquely positioned to assist the Court in resolving the pending Motion to Compel Arbitration, which they contend raises significant legal and operational questions for hospitals and health systems in Pennsylvania and nationwide. According to Movants, this case concerns a nationwide shift in how Aetna Health Inc. ("Aetna") reimburses hospitals that treat members of its Medicare Advantage Plans. They note that, over the past four years, they have submitted more than one hundred *amicus* briefs, none of which courts have declined to accept, and argue that this case should be no different. On June 18, 2026, Aetna filed a Response in Opposition, asserting, among other arguments, that Movants do not satisfy the factors governing *amicus* participation. After careful consideration and for reasons that follow, the Motion is **GRANTED** and *amicus* participation will be permitted.

## II.    FACTUAL BACKGROUND

Jefferson Health and Aetna entered into a written agreement (the "Hospital Service Agreement"), under which Aetna provides services coverage for services rendered by Jefferson Health to members of Aetna's commercial and Medicare Advantage Plans. *See* Compl. (ECF No. 1) at 4. Effective April 1, 2023, Plaintiffs Thomas Jefferson University d/b/a Jefferson Health and Lehigh Valley Physician Hospital Organization, Inc. ("LVPHO") crafted a similarly structured written agreement with Aetna (the "Physical Hospital Organization Agreement"). *Id.* at 6. Under both agreements, Aetna agreed to remain, throughout the term of the contract, in compliance with all applicable federal and state laws and regulations governing the agreement and the services to be provided under it, set forth in Section 3.2 of the Jefferson Health Agreement and Section 3.2.3 of the LVPHO Agreement. *Id.*

On April 6, 2026, LVPHO filed a Complaint against Aetna. *See id*. In the Complaint, Plaintiffs allege that Defendant violated federal law and failed to comply with the terms of said written agreements, citing Aetna's implementation of the "Level of Severity Inpatient Payment Policy" (the "Policy"). *See id*. Plaintiffs further allege that Defendant engaged in "improper denials and/or underpayments for inpatient hospital care that the Hospitals have provided and continue to provide to members of Aetna Medicare Advantage plans." *Id* at 1. According to Plaintiffs, this "Policy" worked in direct conflict with the Centers for Medicare & Medicaid Services' ("CMS") Two Midnight Rule, a 2013 policy that helps hospitals designate patients for appropriate Medicare coverage purposes. *See* Compl. at 1. The Two Midnight Rule serves to outline what inpatient services the traditional Medicare program insures. In addition, Medicare Advantage Plans must provide no less coverage through payment to Medicare Advantage beneficiaries than traditional Medicare. The Two Midnight Rule places patients in one of two categories: "inpatients" (covered

by Part A of Medicare) or "outpatients under observation" (covered by Part B), pledging Medicare Part A covers hospital bills only when the physician expects the hospital stay to surpass two midnights. *Id*. However, Plaintiff contested in their formal Complaint that Aetna denied coverage and payment for inpatient services. *Id*.

In response, Aetna filed a Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration. *See* Defs.' Mot. to Compel Arbitration (ECF No. 12). In their Motion, Defendants request that the Court compel Plaintiffs "to pursue arbitration any dispute with Aetna related to the claims pleaded in the Complaint and stay all proceedings through the pendency of the arbitration proceedings." *Id.* at 2. According to Defendant, valid and binding "Arbitration Provisions" lay within the Agreement, in which both parties agree to confidential arbitration of "*any and all* 'controversies and claims arising out of or relating to' the contracts." *Id* at 1, Hospital Service Agreement ("JH Agmt.") § 8.3.1; Lehigh Valley Physician Hospital Organization Agreement ("LVPHO Agmt.") § 8.3.5. Defendant further contends that arbitration is required because Plaintiffs' claims do not fall within the "equitable relief" exception set forth in the Arbitration Provisions. According to Defendant, the claims are fundamentally legal in nature and therefore outside the scope of that exception. *Id* at 3.

### III.    LEGAL STANDARD

Federal Rule of Appellate Procedure governs *amicus* filings at the appellate level, but no statute, rule, or binding precedent prescribes how district courts must handle requests for *amicus* participation. District courts therefore exercise discretion in determining whether to accept an *amicus* brief. *See Panzer v. Verde Energy USA, Inc.*, 2021 WL 2186422, at *1 (E.D. Pa. 2021). *See also Avellino v. Herron,* 991 F. Supp. 730, 732 (E.D. Pa. 1998) ("A district court has inherent authority to allow *amicus curiae* to participate in proceedings."). The Third Circuit has said that

"permitting persons to appear in court… as friends of the court… may be advisable where third parties can contribute to a court's understanding." *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987). In considering whether to grant or deny leave to file an *amicus* brief, district courts have deemed the following four factors important to consider: whether (1) the petitioner has a "special interest" in the particular case; (2) the petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to a particular outcome in the case. *See Liberty Res., Inc. v. Phila. Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005).

## IV.    DISCUSSION

### A.  Special Interest

Movants argue that they have a cognizable special interest in this litigation because the challenged Policy directly affects hospital reimbursement practices and day-to-day operations for AHA and HAP member hospitals. *See* Mot. for Leave to File Amicus Br. (ECF No. 33) at 3. They maintain that the Policy, and the enforceability of arbitration provisions in this context, will have nationwide implications for hospitals with provider agreements with Aetna. *Id.* Movants further assert that their members would face concrete administrative and financial burdens if the Policy were upheld, including diverting physician advisors from patient care to review Milliman Care Guidelines ("MCG").[1] *Id.* They also highlight AHA's longstanding work ensuring Medicare Advantage Organizations comply with the Two-Midnight Rule, contending that the Court's resolution will materially affect regulatory obligations, reimbursement processes, and operational planning.

Defendant counters that Movants' interests are merely derivative of Plaintiffs' and

---

[1] Milliman Care Guidelines are evidence-based clinical criteria used by healthcare providers to

therefore generalized rather than "special." *See* Def.'s Opp'n (ECF No. 39) at 3. Defendant argues that AHA and HAP's status as trade associations, their filing of a joint brief, and their representation by the same counsel demonstrate alignment, not distinction, from Plaintiff's interests. *Id.* Defendant also contends that *Liberty Resources* supports its positioning, reasoning that the case involved an unrepresented group whose rights depended on the litigation's outcome, whereas Movants here represent the same interests as the hospital Plaintiffs. *Id.* In Defendant's view, trade associations advocating for their members' preferred outcome do not meet the standard for *amicus* participation.

The Court disagrees. Movants' asserted interests are not abstract or generalized. Rather, they are tied to the practical consequences the Policy may impose on hospitals nationwide. If the Policy directly affects AHA and HAP member hospitals, particularly by creating administrative and financial burdens, then Movants may properly take a special interest in the litigation's outcome. Their role as national trade associations strengthens, rather than weakens, that interest. These organizations represent stakeholders across the healthcare industry and are positioned to absorb and respond to operational hardships arising from the Policy's enforcement. Their broad membership base and industry-wide perspective make them uniquely suited to address the Policy's implications, including its effects on reimbursement structures and compliance obligations.

The record also reflects that AHA has spent years working with members to ensure Medicare Advantage Organizations comply with the Two-Midnight Rule. Movants' experience with these compliance efforts, combined with the asserted diversion of physician advisors from patient care to MCG-criteria review, underscores the concrete nature of the burdens at stake. These considerations demonstrate a substantial and legitimate interest in the legal questions presented.

assess medical necessity, Medicare compliance, and level of inpatient care.

5

Accordingly, the Court finds that Movants possess the "special interest" necessary to justify *amicus* participation.

### B. Competent Representation

Movants contend that their interests are not adequately represented in this litigation and their proposed submission offers a distinct perspective rather than merely repeating arguments already presented. *See* Mot. for Leave to File Amicus Br. (ECF No. 33) at 5. They argue that their nationwide and commonwealth-wide experience evaluating insurer policies uniquely positions them to explain the practical consequences of channeling disputes over unilateral policy changes into confidential arbitration – specifically, the effects on transparency, consistency of outcomes, and hospitals' ability to anticipate and manage reimbursement-related operational risks. *Id*.

Defendant disagrees. *See* Def.'s Opp'n (ECF No. 39) at 5. They first assert that Plaintiffs are adequately represented because they are represented by two multinational law firms – Cozen O'Connor and King & Spalding – each with more than 1,000 attorneys. *Id.* Defendant argues that the size and resources of these firms ensure competent representation of any interests Movants might raise. Defendant further contends that Movants' arguments are duplicative of the briefing already submitted, noting that Movants quote a Plaintiff-submitted declaration to support the claim that the insurer policy changes impose administrative burdens. *Id.* at 6. In Defendant's view, Plaintiffs have already raised concerns about administrative burdens, and Movants' additional assertions regarding transparency, consistency, and operational risks add nothing unique. *Id.* at 5. Defendant also argues that because Plaintiffs are members of AHA, they are "sufficiently competent" to represent any special interests Movants may have. *Id.* at 7.

The Court reaches a different conclusion. Movants possess years of experience assessing the effects of insurer policies on hospitals, expertise Plaintiffs do not claim to have. Defendant's

focus on the size of Plaintiffs' law firms misconstrues the meaning of "adequate representation." The relevant inquiry is not whether Plaintiffs have competent counsel, but whether Movants' specialized knowledge and industry-wide perspective are already reflected in the submissions. They are not. Plaintiffs have not presented themselves as experts in explaining the broader, systemic consequences of compelling arbitration in this context, nor have they addressed the implications for transparency, consistently of outcomes, or hospitals' ability to anticipate and manage reimbursement-related operational risks.

Movants' experience, including AHA's years of work with members on the very issues implicated here, provides context and expertise beyond what Plaintiffs have offered. Their perspective is therefore distinct, non-duplicative, and useful to the Court.

### C. Timeliness and Usefulness

Movants argue that their submission is both timely and useful to the Court's resolution of the issues presented. *See* Mot. for Leave to File Amicus Br. (ECF No. 33). They note that their brief was filed within seven days of Plaintiff's opposition to the Motion to Compel Arbitration, consistent with Federal Rule of Appellate Procedure 29(a)(6), ensuring Defendant had adequate opportunity to respond. *Id.* at 5-6. Movants further contend that their industry-wide perspective will assist the Court in understanding how insurer reimbursement policies operate in practice and how compelled arbitration may affect hospitals' ability to obtain consistent and transparent resolution of recurring disputes across facilities and jurisdictions. *Id.* They assert that this context will help the Court evaluate the practical consequences of compelling arbitration, including the potential for fragmented outcomes and reduced public guidance on issues affecting hospitals and patients.

Defendant disagrees, arguing that Movants' information is irrelevant because neither AHA

7

nor HAP is a party to the Agreement, and parties to a contract are best positioned to interpret its terms. *See* Def.'s Opp'n (ECF No. 39) at 8. Defendant further contends that Movants' "background considerations" regarding arbitration are immaterial, as public policy concerns cannot override explicit contractual language. *Id.* Defendant maintains that the confidentiality provisions at issue reflect bargained-for terms designed to protect rate information, not conceal wrongdoing, and therefore Movants' preference for public proceedings lacks legal basis. *Id.*

The Court finds that Movants satisfy the third factor. Their brief is timely, and the Court rejects Defendant's argument that Movants' perspective is irrelevant merely because they are not parties to the Agreement. The inquiry is whether the information offered will meaningfully assist the Court, not whether the *amici* are signatories to a contract. Movants provide insight into how compelled arbitration may affect hospitals' ability to obtain consistent, transparent resolution of the disputes that recur across facilities and jurisdictions. This industry-wide context is pertinent in assessing broader implications of enforcing the Policy at issue, particularly where the Court's ruling may influence future disputes involving similar insurer practices. Accordingly, the Court concludes that Movants' proffered information is both timely and useful to the Court's consideration of the pending Motion to Compel Arbitration.

### D. Impartiality

Movants argue that their participation is not rendered inappropriate by any interest they may have in the outcome. *See* Mot. for Leave to File Amicus Br. (ECF No. 33). They acknowledge that courts consider impartiality but correctly note that "there is no rule… that *amici* must be totally disinterested." *Liberty Res.*, 395 F. Supp. 2d at 209. The Third Circuit has likewise rejected the notion that an *amicus* must be wholly neutral, observing that "it is not easy to envisage an *amicus* who is "disinterested" but still has an "interest" in the case." *Neonatology Assocs., P.A. v. C.I.R,*,

8

293 F. 3d 128, 131-32 (3d Cir. 2002). Movants assert that their interest is not pecuniary but principled: they seek to ensure that disputes involving insurers' nationwide policies are resolved "through litigation, rather than confidential arbitration," and to provide the Court with a full understanding of the broader implications of its ruling for nonparties affected by Aetna's Policy and dispute-resolution mechanism. *See* Mot. for Leave to File Amicus Br. (ECF No. 33) at 7.

Defendant takes the opposite view. Defendant argues that Movants function more as "*amicus reus*" or friend of the Plaintiffs, rather than neutral *amicus curiae*. *See* Def.'s Opp'n (ECF No. 39) at 13. Defendant contends that *amicus* participation is inappropriate where *amici* represent business interests directly affected by the ruling. *See Sciotto*, 70 F. Supp. 2d at 555. Defendant further notes that Plaintiffs are dues-paying members of AHA and HAP, and that AHA has issued public statements on Jefferson Health's behalf, suggesting alignment of interests *See* Def.'s Opp'n (ECF No. 39) at 10. Although Defendant concedes that appellate *amicus* practice may differ, it maintains that district courts continue to treat partiality as a relevant factor. *Id.* at 13.

The Court agrees that Movants have some level of partiality but rejects the notion that their interest is improper. Movants' stated interest concerns the broader precedent that may be set regarding the resolution of nationwide insurer policies – specifically, whether such disputes should be addressed publicly through litigation rather than confidential arbitration. Their perspective is rooted in policy considerations, and the practical effects arbitration may have on their hospital members. Partiality of this nature does not preclude *amicus* participation. Accordingly, the Court concludes that Movants' interest does not render their participation inappropriate, and this final factor is satisfied.

## V.     CONCLUSION

The Court finds that Movants satisfy all four factors governing *amicus* participation.

9

Through well-supported argument, Movants have shown that a) they possess a special interest in the legal outcome of this matter; b) their interests are not adequately represented by the parties; c) submission is both timely and useful; and d) although they have an interest in the broader implications of the Court's ruling, that interest does not bar their participation. Accordingly, Movants' Motion is **GRANTED**.  An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge