**HICKS THOMAS LLP**
A REGISTERED LIMITED LIABILITY PARTNERSHIP

2300 TC ENERGY CENTER
700 LOUISIANA STREET
HOUSTON, TEXAS 77002

TELEPHONE: 713.547.9100
FACSIMILE: 713.547.9150

September 2, 2026

**VIA ECF**

Hon. John M. Gallagher
United States District Judge
United States District Court, Eastern District of Pennsylvania
504 W. Hamilton Street, Suite 4701
Allentown, PA 18101

Re: *Thomas Jefferson University dba Jefferson Health & Lehigh Valley Physician Hospital Organization, Inc. v. Aetna Health Inc.*, Civil Case No. 5:26-cv-02215-JMG; **Defendant's Summary of Issues for Oral Argument**

Dear Judge Gallagher:

Pursuant to this Court's Order dated August 18, 2026 (ECF No. 45), Defendant Aetna Health Inc. ("Aetna") respectfully submits this summary of the issues it intends to address at oral argument on September 21, 2026.

Two motions are pending before the Court: (1) Aetna's Motion to Compel Arbitration and Stay Proceedings Pending Arbitration (ECF No. 12); and (2) Plaintiffs' Motion for Expedited Declaratory Relief (ECF No. 8). Aetna respectfully submits that its Motion to Compel should be heard first because it presents a threshold jurisdictional question that, if granted, moots Plaintiffs' Motion. Aetna anticipates raising the following issues:

**A. Aetna's Motion to Compel Arbitration (ECF No. 12)**

1. *Plaintiffs' claims seek payment of money under a contract, not equitable relief, and fall squarely within the arbitration provisions.* The Arbitration Provisions in both the Jefferson Health Agreement (§ 8.3.1) and the LVPHO Agreement (§ 8.5.1) require binding arbitration of "all controversies or claims arising out of or relating to" the Agreements, with a narrow exception for claims "seeking temporary, preliminary, or permanent injunctive relief or any other form of equitable relief." Aetna intends to demonstrate that the substance of Plaintiffs' Complaint, regardless of how it is labeled, seeks an order that Aetna pay higher reimbursement rates under the parties' Agreements. This is quintessential legal and monetary relief subject to arbitration. Courts must look beyond labels to the substance of a claim, and here, every factual allegation in the Complaint centers on Aetna's alleged underpayment of money for services rendered. Plaintiffs cannot plead around their arbitration obligations through artful relabeling. Nor does the separate provision that arbitrators may award "only

monetary relief" help Plaintiffs. That provision sits outside the arbitrability provisions and caps what an arbitrator may award, but it does not narrow the scope of claims that §§ 8.3.1 and 8.5.1 send to arbitration in the first place. Plaintiffs' argument that they did not agree to arbitrate non-monetary claims conflates a remedial limitation with an arbitrability carveout that does not exist.

2. *Plaintiffs' declaratory judgment claim seeks legal relief masquerading as equitable relief.* More specifically, Aetna will address why Plaintiffs' declaratory judgment claim in particular does not fall within the equitable relief exception. A declaratory judgment is "neither fish nor fowl, neither legal nor equitable"—its character depends on the nature of the underlying claim. Here, Plaintiffs seek a declaration that Aetna's Level of Severity Payment Policy ("LOS Policy") breaches the Agreements and that Aetna must pay at a higher rate. Because a ruling in Plaintiffs' favor would yield readily calculable damages—the difference between what Aetna paid under the LOS Policy and what Plaintiffs contend they should have been paid—this is precisely the type of legal claim "masquerading" as declaratory relief that courts have refused to treat as equitable. *See Greg Prosmushkin, P.C. v. Hanover Ins. Grp.*, 479 F. Supp. 3d 143, 148 (E.D. Pa. 2020) (recognizing that a declaratory claim with "very obvious and specific damages attached" is "indistinguishable from legal relief").

3. *A baseless request for specific performance relief cannot serve as an end run around the broad arbitration provision.* Under Pennsylvania law, specific performance is available only where the thing sought is "unique and cannot by its nature be duplicated" and there is no adequate remedy at law. *Cimina v. Bronich*, 537 A.2d 1355, 1357 (Pa. 1988). Plaintiffs seek an order that Aetna pay money under the Agreements at a certain rate. But money is fungible, not unique. The alleged "administrative burdens," including those allegedly and speculatively causing "patient confusion," are textbook consequential damages (which the parties' contracts forbid) and do not render monetary damages inadequate. Courts applying Pennsylvania law do not treat claims as "specific performance" where, as here, the plaintiff's remedy is monetary damages for breach of contract. Furthermore, Plaintiffs' statement that the LOS Policy improperly negates physician clinical judgment does not transform their claim into one for equitable relief because the supposed negation of clinical judgment relates only to the rate of payment (i.e., alleged money damages) for the services—not the treatment that the member receives. Ultimately, the dispute is one of payment. Any alleged impact on clinical judgment is simply another way of characterizing a disagreement over the reimbursement methodology, which remains a monetary claim subject to arbitration.

4. *The equitable relief exception is an aid to arbitration, not a carve-out to avoid it.* Further, the "except for" clause in the Arbitration Provisions does not carve out entire contractual disputes from arbitration. Rather, it removes one limited power from arbitrators: the power to award equitable relief in aid of the arbitrator's substantive determinations. Indeed, this is the only reasonable interpretation of the Arbitration Provisions that harmonizes all terms. *See, e.g., Continental Materials, Inc. v. Veer Plastics Private Ltd.*, No. 2:22-CV-3685-MRP, 2023 WL 2795345 (E.D. Pa. Apr. 5,

2023) (finding that reading an equitable relief exception as exempting any claim that includes a prayer for equitable relief would "render the rest of the arbitration agreement void"). Thus, an arbitrator must first resolve the antecedent legal questions, including whether the LOS Policy breaches the Agreements, before any court may consider whether equitable relief is warranted.

5. *The Court need not reach arbitrability because the parties delegated that question to the arbitrator.* In any event, the question of arbitrability can and should be referred to the arbitrator to make the determination of arbitrability in the first instance. Both Agreements incorporate the AAA Commercial Arbitration Rules and the AHLA Rules, each of which vests the arbitrator with the power to rule on jurisdiction and arbitrability. By agreeing to arbitrate under those institutional rules, the parties clearly committed threshold questions of arbitrability to the arbitrator, not to the Court.

6. *The FAA requires a stay of these proceedings pending arbitration.* Under 9 U.S.C. § 3, as reaffirmed in *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024), when a court finds an arbitrable dispute (including that the arbitrator should determine arbitrability) and a party requests a stay, the court must stay the proceeding. If the Court grants Aetna's Motion to Compel, all proceedings including Plaintiffs' Motion for Expedited Declaratory Relief must be stayed.

**B. Plaintiffs' Motion for Expedited Declaratory Relief (ECF No. 8)**

The Court should, respectfully, compel arbitration without reaching Plaintiffs' Motion. Should the Court reach Plaintiffs' Motion, however, Aetna intends to address the following issues in opposition:

1. *Aetna's Motion to Compel must be resolved first.* Aetna's Motion presents a threshold jurisdictional issue. If this dispute belongs in arbitration, the Court lacks authority to enter declaratory relief. The due order of judicial consideration requires resolution of the arbitration question before any merits determination.

2. *There is no good cause to fast-track a hearing.* While Federal Rule of Civil Procedure 57 permits the Court to order a speedy hearing, that discretion is reserved for disputes that turn on purely legal questions and present genuine urgency. This garden-variety contract dispute, laden with unresolved facts, qualifies as neither. As an initial matter, because Medicare Advantage ("MA") plan members are receiving inpatient benefits for the services that are the subject of this dispute, there is no conceivable argument that this dispute affects the MA members. Rather, this is a contract-rate dispute between long-standing business partners. As such, even if there were some ongoing violation of federal law, which there is not, there is no alleged harm atypical of routine breach-of-contract claims that would justify the extraordinary relief of ***an expedited hearing***. Moreover, Plaintiffs' allegation of violations of federal law do not support expedited relief. Plaintiffs' theory rests on the Two Midnight Rule, but they conflate its two distinct components: the two-midnight benchmark (a coverage criterion that applies to MA plans) and the two-midnight presumption (a payment instruction directed solely at

Traditional Medicare contractors). CMS has explicitly confirmed that "the 'two midnight presumption' . . . does not apply to MA plans." 88 Fed. Reg. at 22,191. And the Medicare Act's Non-Interference Clause, 42 U.S.C. § 1395w-24(a)(6)(B)(iii), prohibits CMS from requiring "a particular price structure for payment" in Medicare Advantage Organization-provider contracts. Because Plaintiffs' core legal theory misapplies a federal regulation that does not govern the payment terms between Aetna and its contracted providers, there is no good cause to expedite a hearing on that basis. Moreover, the LOS Policy actually results in faster payment on claims that previously would have been denied as inpatient initially and then rebilled as observation services.

3. *Factual issues predominate and preclude expedited determination.* Plaintiffs seek to portray their claims as purely legal questions, but Section 5.1 of both Agreements specifically governs compliance with Aetna's Policies and sets forth processes for notice, objection, and good-faith negotiation of amendments concerning policy changes. Whether Plaintiffs complied with these contractual prerequisites, whether the LOS Policy constitutes a "Material Change" under the Agreements, and whether Plaintiffs engaged in the required good-faith negotiations are all disputed fact questions that necessitate discovery.

4. *An expedited hearing would unfairly prejudice Aetna.* Granting Plaintiffs' request for expedited proceedings would deprive Aetna of a meaningful opportunity to develop the factual record. For instance, Plaintiffs have submitted declarations and made other allegations raising factual assertions about the LOS Policy's alleged impact that Aetna has not had the opportunity to test through discovery. As another example, Aetna has the contractual right to issue policies under the terms of the Agreements' Section 5.1 provision. That provision governs the parties' rights and obligations concerning policy issuance, including specified processes triggered when certain requirements are met. Under Section 5.1, unresolved factual questions include whether the LOS Policy constitutes a "Material Change," whether Plaintiffs satisfied contractual prerequisites, and whether Plaintiffs engaged in required good-faith negotiations. Dramatically shortening the time for Aetna to evaluate these claims, conduct discovery, and brief the issues would be unreasonable and unfairly prejudicial. Notably, Plaintiffs had months to develop their arguments before filing suit, yet Aetna has had no opportunity to conduct discovery on the disputed factual issues. Against that prejudice, Plaintiffs have demonstrated no genuine urgency: members continue to receive inpatient benefits, the administrative burdens Plaintiffs cite are routine, and the LOS Policy actually results in faster payment on claims that previously would have been denied and would have required Plaintiffs to submit a new bill. In sum, when the prejudice to Aetna is weighed against what is, at bottom, a commercial rate dispute over a policy Aetna has the contractual right to implement, the balance tips decidedly against expedited relief.

Aetna looks forward to addressing these issues before the Court at the September 21, 2026 oral argument.

Respectfully submitted,

By: */s/ M. Katherine Strahan*

M. Katherine Strahan
*Admitted Pro Hac Vice*
Texas State Bar No. 24013584
kstrahan@hicks-thomas.com
JOHN B. SHELY
*Admitted Pro Hac Vice*
Texas State Bar No. 18215300
jshely@hicks-thomas.com
Clarissa Medrano
*Admitted Pro Hac Vice*
Texas State Bar No. 24106296
cmedrano@hicks-thomas.com
HICKS THOMAS LLP
700 Louisiana St, Suite 2300
Houston, Texas 77002
Telephone: (713) 547-9100
Telecopier: (713) 547-9150

Adam J. Petitt (Bar #319609)
ROBINSON & COLE LLP
One Liberty Place
1650 Market Street, Suite 3030
Philadelphia, PA 19103
Telephone: (215) 398-0600
Telecopier: (215) 827-5982
apetitt@rc.com

MKS/mlg

cc: All Counsel of Record (via ECF)