**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THOMAS JEFFERSON UNIVERSITY, *et al.*, :
Plaintiffs, :
:
v. : Civil No.: 5:26-cv-02215-JMG
:
AETNA HEALTH INC., :
Defendant. :

**MEMORANDUM OPINION**

**GALLAGHER, J.** **November 4, 2026**

## I. OVERVIEW

The underlying dispute in this case centers on a reimbursement policy implemented by Defendant that Plaintiffs allege violates federal law and agreements between the Parties. Defendant filed a Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration (ECF No. 12) with a corresponding brief in support (ECF No. 12-1) ("Def. Br.). Plaintiffs filed a Response in Opposition to the Motion to Compel (ECF No. 23) ("Pl. Resp."). Defendant filed a reply in support of its Motion (ECF No. 38) ("Def. Repl. Br.").[1]

At the request of the Parties, the Court also held oral argument on Defendant's Motion. *See* ECF Nos. 46-48.[2]

## II. BACKGROUND

[1] The Court also received and has considered a Brief of *Amici Curiae* filed by the American Hospital Association and the Hospital and Healthsystem Association of Pennsylvania. *See* ECF No. 42.

[2] During oral arguments, the Parties also presented argument on Plaintiffs' Motion for Expedited Declaratory Relief (ECF No. 8). The Court will address that Motion in a separate order.

The general facts of this case involve disputes over a new payment policy implemented by Defendant Aetna Health Inc. ("Aetna" or "Defendant") for its coverage of claims for certain Medicare patients. Aetna is a Medicare Advantage Organization ("MAO"). Def. Br. at 3. In this capacity, it administers benefits for beneficiaries that enroll in its Medicare Advantage ("MA") plans, offered under Part C of the Medicare Act. *Id.* (citing 42 U.S.C. § 1395w-27).

Aetna has entered into contracts with Plaintiffs Thomas Jefferson University ("Jefferson Health") and Lehigh Valley Physician Hospital Organization, Inc. ("LVPHO") (collectively, the "Hospitals" or "Plaintiffs") for Plaintiffs to provide services to Aetna's commercial and Medicare Advantage members. Under the agreements, Aetna reimburses the Hospitals for services rendered according to certain predefined policies and procedures. Complaint, ECF No. 1 ("Compl.") at ¶¶ 18, 26.

Plaintiffs allege that Aetna implemented a new "Level of Severity Inpatient Payment Policy" (the "Policy") effective January 1, 2026 which changes the reimbursement method for inpatient stays between one and four midnights for patients "urgently or emergently admitted to a hospital." *Id.* at ¶¶ 45-46. According to the updated Policy, Aetna will authorize the inpatient stay but will reimburse Plaintiffs at a lower "level of severity rate" if the inpatient stay does not meet certain screening criteria. *Id.* at ¶ 47.

Plaintiffs filed a Complaint alleging that Aetna's new Policy violates federal law – specifically the "Two Midnight Rule" which enunciates certain coverage requirements for inpatient stays – as well as the agreements between the Parties. *Id.* at ¶¶ 1-3. The Complaint contains two claims. The first claim is titled "BREACH OF CONTRACT – SPECIFIC PERFORMANCE" and through this claim Plaintiffs request "specific performance that Aetna comply with the terms of the Agreements and pay the contracted inpatient reimbursement rate for

inpatient admissions that meet the Two Midnight Rule." *Id.* at ¶ 80. The second claim is titled "DECLARATORY JUDGMENT" and through this claim Plaintiffs seek "an expedited declaratory judgment that Aetna's 'Policy' violates federal law, i.e., the Two Midnight Rule, and that Aenta cannot apply the 'Policy' as to the Hospitals without a contractual amendment." *Id.* at ¶ 90. In the "Prayer for Relief," the Plaintiffs seek the following relief from the Court:

> (i) Enter a declaratory judgment that (a) applicable federal law and the Agreements require Aetna to comply with the Two Midnight Rule for claims for inpatient services for Aetna members, (b) Aetna's 'Policy' violates the Two Midnight Rule, and (c) Aetna may not unilaterally implement this 'Policy' without a contractual amendment.
>
> (ii) Enter an injunction enjoining Aetna from implementing the 'Policy' as to the Hospitals;
>
> (iii) Award all costs and disbursements of this action, including reasonable attorneys' fees and expenses; and
>
> (iv) Such other and further relief as the Court deems just and proper.

*Id.* at "Prayer for Relief."

Aetna filed a Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration arguing that the agreements between Aetna and the Plaintiffs require arbitration for all claims set forth in Plaintiffs' Complaint. *See* ECF No. 12.

The agreement between Aetna and Jefferson Health provides the following provisions relevant to arbitration:

> 8.3.1. Except as provided expressly otherwise herein, all controversies or claims arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for those seeking temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration administered by the American Arbitration Association ("AAA") and conducted by a sole Arbitrator ("Arbitrator") in accordance with the AAA's Commercial Arbitration Rules ("Rules"). The Federal Arbitration Act, 9 U.S.C. §§ 1-16 shall govern such arbitration, to the exclusion of state laws inconsistent

> therewith or that would produce a different result, and judgment on the award rendered by the Arbitrator (the "Award") may be entered by any court having jurisdiction thereof. A stenographic record shall be made of all testimony in any arbitration in which any disclosed claim or counterclaim exceeds $250,000. An Award for $250,000 or more shall be accompanied by a short statement of the reasoning on which the Award rests, including factual findings and the reasons on which their decision is based. The arbitration provisions in this Section do not preclude Company or Hospital from bringing issues to the attention of Federal, state, or local agencies. Such agencies can, if the law allows, seek relief against Company or Hospital. **Company and Hospital understand and agree that, by agreeing to this arbitration provision, each is waiving the right to participate in a class action against the other.** These arbitration provisions evidence a transaction in interstate commerce, and, thus, the Federal Arbitration Act governs their interpretation and enforcement; provided, however, that the arbitration provisions set forth herein shall not apply to and shall not prohibit either party from seeking solely injunctive relief in a court of competent jurisdiction in its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.
>
> . . .
>
> 8.3.5 Arbitrators may award only monetary relief, and are not empowered to award damages other than compensatory damages and. in the arbitrator's discretion. pre-award interest.

ECF No. 15, at Exhibit A (emphasis in original).

The agreement between Aetna and LVPHO provides the following provisions relevant to arbitration:

> 8.5.1 Except as set forth in Section 8.4, any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for those seeking temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration.
>
> . . .
>
> 8.5.3 The arbitration will be governed by the American Health Law Association ("AHLA") Alternative Dispute Resolution Service, Rules of Procedure for Arbitration ("AHLA Rules"), as modified by this arbitration provision, and will be administered by the AHLA. Unless the Parties agree otherwise, any arbitration hearings will take place in Allentown, Pennsylvania. Where a

> Party's claim is for greater than Ten Million Dollars ($10,000,000), a panel of three (3) arbitrators will preside over the matter, unless the Parties agree otherwise. If a Party's claim is for less than Ten Million Dollars ($10,000,000), a single (1) arbitrator will preside over the matter, unless the Parties agree otherwise. The payment of filing, administrative and arbitrator fees shall be governed by the AHLA Rules. . It is expressly understood that the arbitration (including any letters or other documents sent or filed with the AHLA or arbitrator) shall remain confidential, including communications at the arbitration or between the Parties and/or the arbitration. If a Party's claim is for Ten Thousand Dollars ($10,000) or less, Company and LVPHO may jointly decide, by agreement, whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AHLA Rules. If a Party's claim exceeds Ten Thousand Dollars ($10,000), the arbitration will be conducted by a hearing in a manner that allows the Parties to present evidence through the testimony of witnesses, with a stenographic record, consistent with the Federal Rules of Evidence. Regardless of the manner in which the arbitration is conducted, the arbitrator(s) shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based. The payment of filing, administrative and arbitrator fees shall be governed by the AHLA Rules.
>
> . . .
>
> 8.5.5 Arbitrators may award only monetary relief for breach of contract, and are not empowered to award punitive, exemplary, extra-contractual damages or injunctive relief or other equitable remedies including but not limited to lost profits or opportunities, attorney's fees or interest.

*Id.*, at Exhibit B.

Aetna argues that the arbitration clauses broadly cover any claims "arising out of or relating to this Agreement[s]" which would include Plaintiffs' claims. Aetna further argues that an arbitrator – and not the Court – should consider the question of which claims fall under the arbitration agreement. Plaintiffs counter that the agreements except claims which seek equitable or non-monetary relief from arbitration and Plaintiffs' claims should therefore remain with the Court.

## III. LEGAL STANDARD

"If it is 'apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Williams v. Goldman Sachs Bank USA*, 2026 U.S. Dist. LEXIS 234078, 2026 WL 3071946, at *2-3 (E.D. Pa. Oct. 14, 2026) (quoting *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013).

"[I]f a party moves to compel arbitration based on an authentic arbitration agreement that is attached to the complaint, the Rule 12(b)(6) standard is appropriate unless 'the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate at issue." *Silfee v. Auto. Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017) (quoting *Guidotti*, 716 F.3d at 776). Here, Plaintiffs do not dispute the validity of the arbitration provisions. *See generally* Pl. Resp. Thus, the Rule 12(b)(6) standard is appropriate.

"A written provision in… a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction… shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA places arbitration agreements "on an equal footing with other contracts." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted).

"The FAA establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000). "When the parties have a valid arbitration agreement, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]'" *Ace Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 77 (3d. Cir.

2018) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985)). However, "the presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014). "Otherwise, the plain language of the contract controls." *Id.*

## IV. ANALYSIS

### a. Whether the Court Should Determine Arbitrability

Before we determine whether Plaintiffs' claims are subject to the mandatory arbitration provisions (*i.e.* arbitrability), we must address Aetna's threshold argument that this Court should not even make that determination. Aetna argues that a court cannot adjudicate arbitrability if the contract clearly and unmistakably delegates the question to the arbitrator. Def. Repl. Br. at 7. Aetna argues that each contract does so by incorporating procedural arbitration rules – in this case the AAA (Jefferson Health) and AHLA (LVPHO) rules – which delegate the authority to adjudicate arbitrability to the arbitrator.[3]

"In the vast majority of cases, the arbitrability of a dispute is a question for judicial determination." *CardioNet, Inc.*, 751 F.3d at 171. It is presumed that courts must decide questions of arbitrability, and "[t]he burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator." *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 335 (3d Cir. 2014). Therefore, parties may agree

---

[3] *See* AAA Commercial Arbitration Rules & Mediation Procedures, R-7(a) https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-procedures.pdf ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections … to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." ); AHLA Rules of Procedure for Commercial Arbitration, R-3.1 https://ahla-website-com-staging-2023.americanhealthlaw.org/dispute-resolution-services/arbitration/rules-of-procedure-for-arbitration/commercialarbitration ("[T]he arbitrator . . . shall have the power to determine his or her jurisdiction and any issues of arbitrability.").

to have an arbitrator decide "gateway" questions of arbitrability but only "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Aetna is correct that incorporation of arbitration rules can constitute such clear and unmistakable evidence. *See e.g., Chesapeake Appalachia, LLC v. Scout Petroleum, LLC,* 809 F.3d 746, 763 (3d Cir. 2016) ("It appears that virtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."). But incorporation alone does not relieve the Court of its duty to determine arbitrability for any possible dispute. As Judge Perez recently held, "where a dispute arguably falls within a narrow carve-out provision, circuit courts have found that questions of arbitrability should remain with the court." *Cont'l Materials, Inc. v. Veer Plastics Priv. Ltd.*, No. 2:22-CV-3685-MRP, 2023 WL 2795345 (E.D. Pa. Apr. 5, 2023). This holding relied on support from the Fifth Circuit Court of Appeals in *Archer & White Sales, Inc. v. Henry Schein, Inc.* in which the court found – when considering a similar arbitration clause – that "[t]he plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes *except* those under the carve-out." 935 F.3d 274, 281 (5th Cir. 2019) (emphasis in original).

Aetna argues that this rule – as articulated in *Archer* – has been disfavored by numerous courts. Def. Repl. Br. at 9 n.4. Aetna cites only to a single case – outside of this circuit – to support its position. *Id.* This single case by no means illustrates a consensus against *Archer*. However, Aetna does raise what appears to be a split among circuits on this issue. This apparent split was recently addressed in a law review article authored by Thomas F. Bush. In addressing a similar potential carve-out for injunctive relief, he explained

> Does a court or an arbitrator decide whether the exception for injunctive relief applies to a dispute? Phrased differently, does the carve-out for injunction actions apply to the incorporation of AAA rules, which delegates arbitrability to the arbitrator, or just to the scope of the arbitration clause? In the past few years, several courts have addressed this issue. The case law does not provide clear and consistent guidance.

Thomas F. Bush, *Delegating Authority to Decide Arbitrability: The Problem with Carve-Outs*, 77 DISP. RESOL. J. 1 (2023).

As Mr. Bush succinctly puts it, decisions on this issue have been far from clear or consistent. The Fifth and Second Circuits have found that an exception or carve out creates ambiguity as to whether the parties intended to delegate questions of arbitrability to the arbitrator. *See Archer & White Sales, Inc.,* 935 F.3d at 281; NASDAQ OMX Grp., Inc. v. UBS Sec., LLC, 770 F.3d 1010, 1032 (2d Cir. 2014) ("[T]he Services Agreement does not clearly and unmistakably direct that questions of arbitrability be decided by AAA rules; rather, it provides for AAA rules to apply to such arbitrations as may arise under the Agreement.").[4] Because of this ambiguity, these courts have refused to delegate the question of arbitrability in considering these agreements. On the other side of the coin, the Ninth and Eleventh Circuits have advised that incorporation of arbitration rules constitutes "clear and unmistakable evidence" of delegation of arbitrability even where a carve-out to the arbitration clause exists. *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d

---

[4] Indeed, as Aetna notes, in *Aramark Servs., Inc. Grp. Health Plan v. Aetna Life Ins. Co.,* the Fifth Circuit recently ruled against Aetna Life Insurance Co. on this issue – as well as whether the claims in that case fell under a similar arbitration exemption for those seeking equitable relief. 162 F.4th 532 (5th Cir. 2025). That decision was recently vacated upon an order granting an *en banc* rehearing. *See Aramark Servs., Inc. Grp. Health Plan v. Aetna Life Ins. Co.*, 173 F.4th 744 (5th Cir. 2026) The Fifth Circuit, sitting *en banc*, held oral arguments for the case on September 24, 2026 but has not yet issued a decision. *See Oral Argument Recordings*, FIFTH CIRCUIT U.S. COURT OF APPEALS, https://www.ca5.uscourts.gov/oral-argument-recordings?docket=24. While we are not bound by the ultimate decision of the Fifth Circuit, this development further illustrates the uncertainty in the courts on this issue.

1069, 1076 (9th Cir. 2013) ("Oracle's argument conflates the scope of the arbitration clause, i.e., which claims fall within the carve-out provision, with the question of who decides arbitrability."); *WasteCare Corp. v. Harmony Enters., Inc.*, 822 F. App'x 892, 896 (11th Cir. 2020) ("The arbitration provision's carve-out for equitable relief does not affect this analysis. Although WasteCare's claims may indeed be equitable ones, that 'confuses the question of who decides arbitrability with the separate question of who prevails on arbitrability.'") (quoting *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 71 (2019)).

It appears both the Supreme Court and the Third Circuit have yet to weigh in on this issue specifically. The Supreme Court did address arbitrability and a potential carve-out for equitable claims in *Henry Schein, Inc. v. Archer and White Sales, Inc*. This case was cited by the Eleventh Circuit in *WasteCare* to support its position that such carve-outs do not affect a delegation of the question of arbitrability. *WasteCare Corp.*, 822 F. App'x at 896. However, the Supreme Court – while it was considering an arbitration clause with a potential carve-out for equitable relief – addressed a different, if related issue: whether a court could refuse to delegate the question of arbitrability where the claim of arbitrability was "wholly meritless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). In *Schein*, the parties agreed that arbitration provision had delegated the question of arbitrability to the arbitrator. *Id.* The issue presented was that that "even when a contract delegates the arbitrability question to an arbitrator, some federal courts nonetheless will short-circuit the process and decide the arbitrability question themselves if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.'" *Id*. The Supreme Court considered – and ultimately rejected – this "wholly groundless" exception. *Id.*

The issue here is meaningfully different. The question is not whether the argument for arbitration is wholly groundless.[5] Instead, it is whether the parties intended the incorporation of the AAA or AHLA rules – and thus the delegation of arbitrability – to apply to claims seeking equitable relief. On this question, Court finds the reasoning presented by the Second and Fifth Circuits – and followed by Judge Perez in this district – to be more persuasive.[6]

---

[5] Indeed, in this case, Aetna has presented a reasonable – if ultimately unsuccessful – argument that the claims must go to arbitration. As is explained in more detail below, Aetna is incorrect because Plaintiffs' claims fall under the exception to the arbitration agreement. However, the Court's decision to consider the arbitrability of the claims is not based on the strength – or lack thereof – of Aetna's arguments. For example, the Court in *Continental Materials, Inc.* found that a "potential" carve-out for equitable claims created ambiguity as to whether the agreement delegated the question of arbitrability. No. 2:22-cv-3685, 2023 WL 2795345, at *2 (E.D. Pa. Apr. 5, 2023). However, in deciding arbitrability, the Court ultimately found no such carve-out existed and compelled arbitration. *Id.* at 3-4. The two analyses are separate and governed by different presumptions and considerations.

[6] While we do not have explicit authority from the Supreme Court or the Third Circuit on the issue before us, the Supreme Court does provide some helpful discussion on the broader question of delegating arbitrability. In *First Options of Chicago, Inc. v. Kaplan*, the Supreme Court devoted considerable analysis to the presumption that the arbitrability of a dispute is generally a question for judicial determination. As the Court there explained, this presumption is a qualification to the state-law contract principles which would normally govern a court's interpretation of an arbitration agreement. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). It requires courts to find "clear and unmistakable" evidence of the parties' intent. The reasoning behind this presumption lies in the goal of enforcing the parties' true aim:

> [G]iven the law's permissive policies in respect to arbitration . . . one can understand why the law would insist upon clarity before concluding that the parties did *not* want to arbitrate a related matter. On the other hand, the former question—the 'who (primarily) should decide arbitrability' question—is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. . . . And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

The agreement with Jefferson Health provides in relevant part:

> Except as provided expressly otherwise herein, all controversies or claims arising out of or relating to this Agreement or the breach, termination, or validity thereof, ***except for those seeking temporary, preliminary, or permanent injunctive relief or any other form of equitable relief***, shall be settled by binding arbitration administered by the American Arbitration Association ("AAA") and conducted by a sole Arbitrator ("Arbitrator") ***in accordance with the AAA's Commercial Arbitration Rules ("Rules")***.

ECF No. 15, at Exhibit A.[7]

Ambiguity exists in this provision. The ambiguity arises in whether the incorporation of the AAA rules applies to controversies or claims seeking injunctive or other equitable relief (as the claims in this case arguably do). If we were to rely solely on ordinary contract interpretation principles, a court *could* find such an incorporation applies to all claims, regardless of the carve-out. But it could also reasonably find the opposite. We are bound by the presumptions to resolve any ambiguity against delegating arbitrability to the arbitrator. In other words, where such ambiguity exists, we cannot say there is "clear and unmistakable evidence" that the parties intended to delegate the question of arbitrability to the arbitrator. Thus, the Court will consider the question of arbitrability. [8]

---

*Id.* at 945 (internal citations omitted). In other words – in contrast to the consideration given to which claims should be arbitrated – parties often give relatively less consideration to who should decide arbitrability. So, where ambiguity exists as to whether the parties intended the question of arbitrability to be delegated to an arbitrator, the Court must assume it has not.

[7] The language in the agreement with LVPHO is substantially similar and thus the analysis is the same.

[8] Aetna additionally argues that, unlike cases such as *Archer*, the arbitration clause here does not carve out entire "actions" and "disputes" from arbitration. Def. Br. at 9. Rather, it only carves out particular "relief." *Id.* at 9-10. This argument contravenes the plain language of the agreement which except any "claims and controversies" which seek equitable relief. Aetna Life Insurance Company recently made a similar argument regarding substantially the same arbitration language in the District of Connecticut. *See Aetna Life Ins. Co. v. Bd. of Trs. of AGMA Health Fund*, No. 3:24-cv-1461, 2025 WL 2611947 (D. Conn. Sept. 10, 2025). The court there rejected

**b. Scope of the Agreements**

We now turn to the question of arbitrability itself. "[W]hether a dispute falls within the scope of an arbitration clause depends upon the relationship between (1) the breadth of the arbitration clause, and (2) the nature of the given claim." *CardioNet, Inc.*, 751 F.3d at 174. The parties dispute both the breath of the arbitration clauses and the nature of the claims. We begin with the arbitration clauses.

While Aetna has different arbitration clauses with Jefferson Health and LVPHO respectively, both clauses have substantively the same breadth. The arbitration clauses both generally require binding arbitration for "any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, except for those seeking temporary preliminary or permanent injunctive relief or any other form of equitable relief." ECF No. 15, Exhibit A, § 8.3.1 (Jefferson Health); Exhibit B, § 8.5.1 (LVPHO). Additionally, both contain separate clauses which state that arbitrators may only award "monetary relief." *Id.* at Exhibit A, § 8.3.5 (Jefferson Health); Exhibit B, § 8.5.5 (LVPHO).

The Parties' disputes on the scope of the arbitration clause center around two separate but related issues: 1) whether the language excepting any claims or controversies seeking equitable relief carves out claims from the arbitration process or rather allows injunctive only "in aid of arbitration;" and 2) what effect, if any, the language limiting the arbitrator to award only monetary damages has on which claims can go to arbitration.

Beginning with the first issue, Aetna argues the language of the arbitration clauses do not except entire actions or disputes from the arbitration process. Rather, Aetna contends that the

---

this argument for the same reasons – the exception applies to entire *claims and controversies* seeking equitable relief. *Id.* at 3.

provisions only provide a mechanism for parties to seek equitable relief "in aid of arbitration." Def. Br. at 15-19. Aetna directs the Court to *Continental Materials*. *Id.* at 16-17. There the Court considered a similarly broad arbitration clause but with a decidedly narrower exception. *Continental Materials, Inc.*, 2023 WL 2795345, at 1. The arbitration provision in *Continental Materials* required the parties to arbitrate any dispute, controversy or claim but "[n]otwithstanding the foregoing, a Party may seek specific performance of this Agreement or any other equitable relief in a court of competent jurisdiction." *Id.* There, Judge Perez found "that the equitable relief provision is intended to permit parties to seek judicial enforcement of the arbitration agreement and of any award entered by the arbitrators." *Id*. at 4.

The arbitration provisions are different here. The provision in *Continental Materials* does not carve out entire claims from the otherwise broad agreement to arbitrate. Instead, it separately provides a mechanism to enforce the agreement. The equitable clause in this case *does* carve out claims from the broad agreement to arbitrate. It provides an explicit exception to that broad claim wherein all claims or controversies must be arbitrated *except* for those which seek injunctive or other equitable relief. [9]

Other courts, considering language similar to the agreements here, have found that such an exception does carve out equitable claims from an otherwise broad arbitration provision. *See GateGuard, Inc. v. MVI Sys. LLC*, No. 19 CIV. 2472 (JPC), 2021 WL 4443256, at *6 (S.D.N.Y.

---

[9] The other cases cited by Aetna contain similarly narrow language which does not carve-out entire claims or controversies from arbitration. *See McLaughlin v. Sunshine State Health Plan, Inc.*, No. 8:25-cv-2797, 2025 WL 3227540, at 2 (M.D. Fla. Nov. 19, 2025) ("Notwithstanding anything in this agreement, either party may bring court proceedings to seek an injunction or other equitable relief to enforce any right, duty, or obligation."); *Baldwin Tech. Co., Inc. v. Printers' Serv., Inc.*, No. 15-cv-07152, 2016 WL 354914, at 2 (S.D.N.Y. Jan. 27, 2016) ("Notwithstanding anything to the contrary herein, each party shall have the right to seek injunctive relief in court at any time and under any circumstances.").

Sept. 28, 2021) ("Courts have typically only found an equitable relief provision to serve as a carve-out when the provision says that all 'claims' or 'actions' seeking equitable relief are exempted from arbitration.") (collecting cases).

On the second issue – whether the agreement more broadly excepts all "non-monetary" claims – Plaintiffs focus much of their briefing and argument on the fact that, under the contracts, arbitrators may only award monetary damages. While this may provide additional support for the Court's conclusion that the arbitration provision carves out claims seeking equitable relief – insofar as it implies that the parties believed they had another avenue (the Court) to seek nonmonetary relief – it does not provide an additional set of claims which are excluded from arbitration. The plain language of these provisions provides a limitation on the power of the arbitrator in the event the claims go to arbitration. But it does not provide any additional guidance on which claims go to arbitration. Therefore, to the extent Plaintiffs are arguing that any claims seeking non-monetary relief are excluded from arbitration, the Court disagrees.[10]

In sum, the arbitration agreements between Plaintiffs and Aetna require the Court to compel arbitration for all claims *except* for those seeking injunctive or equitable relief. The question of whether Aetna's motion to compel is appropriate thus depends on whether Plaintiffs' claims seek equitable or injunctive relief.

**c. Nature of the Claims**

---

[10] The distinction is an important one, particularly to our consideration below of the nature of Plaintiffs' declaratory judgment claim. The Plaintiffs ask us to focus entirely on whether they are requesting monetary damages and ignore whether the claims themselves are seeking equitable or legal relief. *See* Pl. Resp. Br. at 10 n.5 ("Because the Hospitals seek only non-monetary relief, and '[a]rbitrators may award only monetary relief' under that Agreements, the legal-equitable distinction is irrelevant to the present dispute."). Because of the language of the arbitration provisions – and the Court's obligation to resolve ambiguity of the agreement in favor of compelling arbitration – we do not agree that the analysis turns solely on whether Plaintiffs seek monetary damages.

Having determined the scope of the parties' arbitration agreements, we next turn to the nature of the Plaintiffs' claims.

**1. Breach of Contract – Specific Performance**

Aetna does not meaningfully dispute that specific performance constitutes equitable relief. Instead, Aetna argues that such equitable relief is unavailable where damages are reasonably ascertainable and adequate. Def. Br. at 12-13; *see Weir v. Progressive Advanced Ins. Co.,* No. 3:25-CV-1504, 2025 WL 3270525, at *7 (M.D. Pa. Nov. 24, 2025) ("Courts applying Pennsylvania law routinely dismiss claims in equity seeking specific performance where, as here, the plaintiff has an adequate remedy at law in the form of monetary damages for breach of contract.").

Aetna's – and to some degree Plaintiffs' – focus on the substance of Plaintiffs' claim for specific performance is misplaced. The question before us is not whether the Court should grant Plaintiffs' claim for specific performance or even whether Plaintiffs have sufficiently pled a claim for specific performance. It is subtler. The question is whether the *nature* of Plaintiffs' claim is equitable or legal (notwithstanding the equitable label). As Aetna correctly notes, courts are required to "look beyond the label to analyze the substance of a claim." Def. Br. at 9 (*quoting Mirambeaux v. Att'y Gen. United States*, 977 F.3d 288, 292 (3d Cir. 2020)). But the substance of Plaintiffs' claim is one seeking equitable relief.

Neither Plaintiffs nor Aetna have identified any cases where the court considered whether a claim was legal in nature despite a label of "specific performance." But it is not hard to imagine one. A party could, for example, seek to enforce a contractual provision requiring payment of a specific amount owed – such as a single or discrete group of reimbursements which Aetna failed to pay. *Cf. Shaping Acad. for Behav. Health Dev., Inc. v. Aetna Behav. Health LLC,* No. 1:25-cv-23640, 2025 WL 3502502 (S.D. Fla. Nov. 14, 2025), *report and recommendation adopted*, No.

1:25-cv-23640, 2025 WL 3502009 (S.D. Fla. Dec. 5, 2025) (finding a claim for declaratory judgment was "solely directed at adjudicating Aetna's alleged nonpayment of reimbursement claims."). Despite any label to the contrary, such a claim would be seeking a finding of liability for damages under an agreement. That is not equitable relief.

By contrast, Plaintiffs are alleging breaches of the agreements and seeking an equitable remedy. Specifically, Plaintiffs are seeking relief which would require Aetna to return to the previous policy by which Aetna reimbursed the hospitals for inpatient admissions. This will undoubtedly have monetary consequences. But that is not the same as seeking monetary damages. In other words, rather than seeking damages related to a specific set of reimbursements paid pursuant to a policy, Plaintiffs are seeking a substantive change to the policy itself. That is equitable relief.

Aetna argues – and may continue to argue – that damages are reasonably ascertainable and adequate for this alleged breach. The veracity of Plaintiffs' claim for specific performance is yet to be determined. All the Court must consider at this stage is whether the claim for "specific performance" in fact seeks equitable relief. It does.

**2. Declaratory Judgment**

Plaintiffs also bring a claim under the Declaratory Judgment Act seeking a judgment that "Aetna's 'Policy' violates federal law, i.e., the Two Midnight Rule, and that Aetna cannot apply the 'Policy' as to the Hospitals without a contractual amendment." Compl. ¶ 90. Plaintiffs, in their Prayer for Relief, request the following from the Court:

> Enter a declaratory judgment that (a) applicable federal law and the Agreements require Aetna to comply with the Two Midnight Rule for claims for inpatient services for Aetna members, (b) Aetna's 'Policy' violates the Two Midnight Rule, and (c) Aetna may not unilaterally implement this 'Policy' without a contractual amendment.

*Id.* at Prayer for Relief. Plaintiffs additionally seek an injunction "enjoining Aetna from implementing the 'Policy' as to the Hospitals" as well as all costs and disbursements of the action including attorney's fees. *Id.*

As an initial matter, Aetna contends the Court must consider whether Plaintiffs' declaratory judgment claim is equitable or legal in nature. Plaintiffs appear to provide a different framing of the issue. Plaintiffs argue that the declaratory relief claim – regardless of any equitable or legal classification – falls under the arbitration exception because it is seeking "non-monetary relief." Pl. Resp. at 6. As is discussed in more detail above, this misses the mark. The arbitration clauses except claims or controversies seeking *equitable* relief. They do not carve out all claims seeking non-monetary relief. The Court therefore agrees with Aetna that the dispute centers on whether the claim for declaratory judgment seeks legal or equitable relief.

The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). Declaratory judgments cannot be classified as purely legal or equitable in nature. *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 223 (3d Cir. 2009) ("[Declaratory judgments] may be granted upon either legal or equitable claims and is *sui generis*."). Courts across the country have nevertheless been forced to consider whether declaratory judgment actions are legal or equitable in nature in a wholly different context from the one before the Court: jury trials.[11] In *AstenJohnson*, the Third Circuit – in deciding whether plaintiff was entitled to a jury trial – considered whether a claim for declaratory judgment was equitable or legal in nature. *Id.* at 222-26. The court explained

[11] Courts in this district have applied the principles from the jury trial context to similar questions of arbitrability. *See Nowak v. Penn. Pro. Soccer, LLC*, No. 12-cv-4165, 2012 WL 4459775, at 2 (E.D. Pa. Sept. 26, 2012) (compelling arbitration where a claim for declaratory judgment was legal in nature and thus fell under an arbitration clause between the parties).

that the "[a] workable formula that has been developed is to determine in what kind of suit the claim would have come to court if there were no declaratory judgment remedy." *Id.* at 223 (emphasis omitted). In the case before the Court, the clear answer is a breach of contract suit. But this, by itself, does not settle the question of whether the suit is legal or equitable. We need to look to look at the type of breach suit which would be – or in this case is – brought. Here, that is a suit seeking specific performance, an equitable remedy. Thus, the declaratory judgment claim is equitable. The court in *AstenJohnson* discussed a similar type of claim and found the declaratory judgment suit was properly classified as equitable:

> Applying this test the district court properly characterized the case at bar as equitable. The complaint centered on the defendant's obligation to convey title to the plaintiff at a certain time in the future – there was no claim for damages or any other legal remedy. ***An action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court.***

*Id.* at 223-224 (emphasis added).[12]

Plaintiffs' declaratory judgment claim centers on Aetna's obligations under the contract not to implement a specific policy. Plaintiffs do not seek damages or any other legal relief. The declaratory judgment claim before the Court is thus properly characterized as equitable in nature.[13]

---

[12] In *AstenJohnson*, the Third Circuit ultimately found that the declaratory judgment action specifically before it would have come in the form of an action for damages and thus was legal in nature. *Id.* at 224.

[13] Both parties devote significant analysis to a discussion of *Greg Prosmushkin v. Hanover Insurance Group*, in which the plaintiff sought to remand a declaratory judgment action. As with the dispute over the specific performance claim, this discussion again misses the essence of what the Court is actually deciding here. The question before the court is not whether the claim for declaratory judgment should be allowed to continue, it is whether the claim is an equitable one.

To the extent Aetna argues this claim – like the claim for specific performance – is merely masquerading as an equitable claim, the argument fails for the same reasons. Plaintiffs are seeking a declaratory judgment which would, if the relief is granted, appear to require Aetna to revert back to a previous policy.[14] It is not – in label or in fact – seeking damages or any other non-equitable relief. Aetna cites to *Shaping Acad. for Behav. Health Dev,* in which a court addressed similar issues regarding a different Aetna entity. No. 1:25-cv-23640, 2025 WL 3502502 (S.D. Fla. Nov. 14, 2025). While the case has some important factual differences, it provides a helpful parallel. In that case, Aetna Behavioral Health LLC ("Aetna Behavioral") agreed to a substantially similar arbitration clause with a behavioral health provider. *Id.* at *2. Specifically, the agreement in that case required arbitration for "'[a]ny controversy or claim arising out of or relating to this Agreement, including breach, termination, or validity,' except for 'injunctive relief or any other form of equitable relief.'" *Id.* The behavioral health provider filed a complaint for declaratory relief seeking a declaration that Aetna Behavioral "violated the terms of the [Provider Agreement] by withholding payment to Plaintiff for services provided to Aenta members . . . [and] to declare that Plaintiff's rights were violated." *Id.* at *1. This is precisely the type of "artful pleading" against which judges across the country have warned. And the court in *Shaping Academy* agreed, finding that the plaintiff's claim, despite styled as seeking "declaratory" relief, was "an artfully labeled claim for breach" and thus fell within the arbitration provision. *Id.* at *5.

But the case before the Court is different. As Aetna Behavioral noted in that case, "Plaintiff's action concern[ed] past due payments, rather than the interpretation of any ongoing or

---

[14] The precise consequences or nature of such relief, if it comes to pass, may be different. But that is not for the Court to consider at this stage. What matters here is that such relief would *not* result directly in a payment of damages from Defendant to the Plaintiffs. Plaintiffs are seeking equitable relief.

future rights." *Id.* Here, Plaintiffs *are* seeking an interpretation of ongoing and future rights. Specifically, a declaration that Aetna's Policy violates the Agreements and federal law. Unlike the claims in *Shaping Academy,* this does not directly implicate any specific reimbursement decisions, either in the past or future. Rather, it implicates the manner in which those reimbursements will be determined which is, by its nature, equitable relief.

Therefore, Plaintiffs' claims are seeking equitable relief and arbitration is not required under the agreements.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Compel Arbitration. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge